FILED
Aug 25, 2025
01:55 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Chad Graves | Docket No. 2024-50-5540 |
| v. | State File No. 25190-2024 |
| Southall Adventures, LLC, et al. | |
| Appeal from the Court of Workers' Compensation Claims Thomas L. Wyatt, Judge | Heard August 1, 2025, in Nashville, Tennessee |

---

### Affirmed in Part, Reversed in Part, and Remanded

---

In this interlocutory appeal, both parties have filed notices of appeal. At an expedited hearing, the employee sought additional medical treatment and temporary disability benefits related to injuries he sustained when he slipped and fell at work. The court ordered the employer to provide the requested benefits but declined to order the employer to authorize treatment with the employee's unauthorized physician for his alleged cervical spine injury. In its notice of appeal, the employer contends the trial court erred when it ordered additional medical and temporary disability benefits for the employee's alleged left knee injury. In his notice of appeal, the employee asserts the trial court erred in declining to compel the employer to approve his unauthorized physician as his authorized treating physician moving forward. Having carefully reviewed the record, we affirm the trial court's order in part, reverse it in part, and remand the case.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Meredith B. Weaver joined.

Nicholas J. Peterson and Brady Allen, Knoxville, Tennessee, for the employer-appellant/appellee, Southall Adventures, LLC

Adam Brock-Dagnan, Nashville, Tennessee, for the employee-appellee/appellant, Chad Graves

### Factual and Procedural Background

Chad Graves ("Employee") worked as a pool cleaner for Southall Adventures, LLC ("Employer"), when, while cleaning a whirlpool, he slipped and fell, landing on a hard

surface on his head, right arm, and the right side of his body. Employee attempted to continue working but had to stop when his nose began to bleed. He reported the injury to Employer and was seen at the Williamson County Medical Center emergency room that same day. While there, Employee complained of nausea, fatigue, headaches, and left knee and foot pain, but he did not report a loss of consciousness after his fall. Diagnostic studies were interpreted as normal, and Employee was discharged home with instructions to follow up with an orthopedic doctor.

Employer provided a panel of physicians from which Employee selected Dr. Jeffrey Lawrence, whom he first saw on April 15, 2024. During that visit, Employee complained of pain and an inability to move his right arm. Dr. Lawrence noted Employee's history of preexisting tendinitis and a previous right shoulder injury from approximately ten years before the work incident. Imaging studies revealed "some cystic change at the attachment site of the rotator cuff," but no fractures or dislocations were noted. Based on Employee's clinical presentation, Dr. Lawrence believed Employee had "pseudo paralysis [and] full-thickness tear of his rotator cuff" and ordered an MRI of the right shoulder. In his report, Dr. Lawrence opined that Employee's "present shoulder injury is work-related and in the course of his normal work activities."

Employee returned to Dr. Lawrence on April 24 with continued complaints of right shoulder pain, neck pain, headaches, burning pain in his trapezial muscle and posterior scapula, pain down his right arm, right wrist and elbow pain, and left knee pain, which he said was "aggravated" during his fall. X-rays of Employee's neck were normal, and the MRI of his right shoulder revealed tendinitis but no full thickness tear of the rotator cuff. Dr. Lawrence diagnosed Employee with a "[c]ervical whiplash type injury" to his neck, right radiculopathy, right shoulder pain, and a concussion. He noted that Employee would need to be evaluated for his concussion and was not to return to work until after he had been cleared.

Employee selected Dr. James Mosly from the original panel for evaluation of his concussion-type symptoms. He first saw Dr. Mosly on May 1 and reported headaches, nausea, and dizziness, as well as neck, shoulder, and left knee pain. Due to Employee's high blood pressure, he was referred to an emergency room so that his blood pressure could be stabilized. Thereafter, Employee was seen at a Vanderbilt walk-in clinic to be evaluated for his concussion and complained of left knee pain, dizziness, headaches, and anxiety, including nightmares and depression. X-rays of his knee revealed osteoarthritic changes in the medial and patellofemoral joints. The provider recommended cognitive behavioral therapy for post-traumatic stress and an orthopedic evaluation of his knee. Due to Employee's co-morbid conditions, the medical providers were unable to evaluate his concussion symptoms.

2

On May 15, Employee returned to Dr. Lawrence with continued complaints of headaches, anxiety, and "a lot of hypertension."[1]  He told Dr. Lawrence that he had been to an urgent care clinic for his concussion and was treated at an emergency room for hypertension.  Employee brought Dr. Lawrence a note from the walk-in clinic that described posttraumatic stress, left knee injury, pain, and hypertension.  The note referred Employee to an orthopedic specialist for evaluation of his knee complaints, and Dr. Lawrence then "recommend[ed] that he be allowed to be seen for his knee from Workers' Comp."  Dr. Lawrence noted that Employee had been to therapy for his shoulder, which was improving; however, he still had pain in the right side of his neck, shoulder, and posterior scapula.  The MRI of Employee's cervical spine revealed a C6-7 central disc protrusion and some foraminal stenosis at C4-5 and C5-6.  Dr. Lawrence diagnosed Employee with right rotator cuff tendinosis and cervical degenerative disc disease with a herniated cervical disc.  Dr. Lawrence reiterated that Employee needed to be seen by a neurologist to rule out a concussion.  He also recommended an authorized evaluation of Employee's left knee complaints, continued physical therapy, and authorization for Employee to see Dr. Robert Lowe, III, another physician in his practice, for Employee's neck complaints.

In the interim, Employer obtained Employee's past medical records, which documented a 2010 surgical repair to the quadriceps tendon in Employee's left knee.  These records also revealed prior treatment for depression and anxiety stemming from a 2020 workers' compensation case.  Employer then retained Dr. Junaid Makda to perform a records review in May 2024.  Dr. Makda's review included records pertaining to Employee's previous left knee injury along with negative x-rays from the date of injury and May 2024.  Ultimately, Dr. Makda opined that the April 10, 2024 incident was not the primary cause of Employee's left knee condition or need for medical treatment of that knee.

Pursuant to Dr. Lawrence's referral, Dr. Lowe initially saw Employee on May 24 and diagnosed him with a cervical disc herniation at C6-7.  Dr. Lowe wrote that it was "certainly reasonable to assume that this is an acute injury."  He recommended continuing physical therapy but did not believe Employee needed surgery.  Dr. Lowe noted that Employee should see a neurologist for concussion symptoms and recommended an EMG.

Thereafter, Employer scheduled an employer's examination with Dr. Jeffrey Hazlewood in July 2024.  Following that examination, Dr. Hazlewood opined that Employee's neck and right arm issues were caused by a disc herniation at C6-7 and cervical whiplash that were caused by the work accident.  He also opined that Employee's headaches likely were the result of a concussion caused by his fall.  However, Dr. Hazlewood stated that Employee's mental condition was related to a "stress reaction" and not post-traumatic stress disorder.  He opined that the April 2024 work accident was not the primary cause of the left knee complaints because, upon examination, he found no

---

[1] In his office note, Dr. Lawrence stated he had been provided with and reviewed video of the work incident.

3

objective evidence of an acute injury to the left knee, stating he saw "nothing to suggest any acute injury on examination, nor apparently did the previous physicians that saw [Employee]."

Following his evaluation with Dr. Hazlewood, Employee returned to Dr. Lowe, who reiterated his causation opinion and noted that the disc protrusion at C6-7 "is related to the work injury." Medical records from that visit mistakenly indicated Employee had completed physical therapy and had undergone a neurological evaluation.[2] Dr. Lowe indicated that he would reorder physical therapy and continue Employee's work restrictions.

Thereafter, Employee testified he began to question whether Dr. Lowe was considering Employee's best interests in his evaluations and treatment recommendations. As a result, he decided to "test" Dr. Lowe's loyalty by requesting that Dr. Lowe remove all work restrictions and release him to return to work. Employee apparently believed that if Dr. Lowe complied with his request, it would prove that Dr. Lowe was not considering his best interests. After Dr. Lowe complied with Employee's request, Employee became convinced that Dr. Lowe was not prioritizing his medical care over the interests of Employer. Consequently, Employee called Dr. Lowe's office to complain. Thereafter, a representative of the medical practice reported to the adjuster that Employee had threatened to "fly off the handle" and come to the doctor's office to "get things done."[3] Upon learning that Dr. Lowe had released Employee to full duty, Employer ceased paying temporary disability benefits on September 10, 2024. As a result of Employee's actions and the medical office personnel's perception of direct threats, Dr. Lowe's practice discharged Employee as a patient of all of its providers. As a result, neither Dr. Lowe nor Dr. Lawrence would agree to see Employee again. In addition, Dr. Lowe issued an opinion indicating that Employee would need no further treatment and qualified for a 0% impairment rating.

In the interim, Employee attempted to return to work but was unsuccessful. Employer offered him a buyout to resign from his job in October, and Employee accepted. Employee testified that he was able to use some of this money to purchase health insurance, which enabled him to obtain treatment for his alleged work injuries.

After being discharged from Dr. Lowe's practice in September 2024, Employee requested replacement panels for continued medical care. Employee ultimately received additional panels in January 2025, and he selected Dr. Jason Jones to treat his shoulder. Following Dr. Jones's initial evaluation, he wrote that it was "not unreasonable to think that the fall could have caused an acute pain on the right side." Employee also selected

---

[2] Employee testified at the hearing that he had not completed physical therapy or had a neurological evaluation because Employer never authorized that treatment.

[3] Employee testified that he never threatened to harm anyone, although he acknowledged he made the call.

two providers from Employer-provided panels for his neck, but both selected physicians declined to treat him. Employer then provided another panel for Employee's neck, but, as of the date of the expedited hearing, Employee had not selected a physician for his neck complaints from Employer's new panel.

Meanwhile, after being discharged from Dr. Lowe's practice in September and while awaiting receipt of new panels, Employee returned to the walk-in clinic where he had been seen previously. There, he saw providers for his neck, right shoulder, and left knee complaints. In December 2024, Dr. Raymond Gardocki evaluated and treated Employee for his neck and recommended a cervical fusion. Employee also saw Dr. Eric Bowman that same month for his left knee complaints. He told Dr. Bowman that he had felt a "pop" in his left knee at the time of the work incident, which was the first indication in the record that Employee reported such a symptom. He also told Dr. Bowman that, after the accident, he experienced left knee pain and "catching" with certain activities. On January 14, 2025, Dr. Bowman surgically repaired medical meniscus and anterior collateral ligament tears in Employee's left knee. Dr. Gardocki ultimately performed a cervical fusion on February 17, 2025. That treatment and surgery were not authorized by Employer.

Employee's counsel sent questionnaires to Dr. Gardocki and Dr. Bowman seeking causation opinions. With respect to the left knee, Dr. Bowman was asked:

> Is it your opinion to a reasonable degree of medical certainty – considering [Employee's] self-reported history, as well as the video documentation – that [Employee's] current left knee problems [are] *causally-related* to the April 10, 2024 work injury?

(Emphasis added.) In response, Dr. Bowman checked "yes." In light of the prior MRI finding of a "non-acute" ACL tear in the left knee, Dr. Bowman was also asked whether Employee's "on-the-job accident primarily caused" that injury, to which Dr. Bowman responded "no" and wrote, "unclear, but unlikely."

In a questionnaire sent to Dr. Gardocki regarding Employee's neck condition, Employee asked if the "on-the-job accident worsened and/or exacerbated [Employee's] C6-C7 herniation and, in turn, primarily caused his need for surgery." In response, Dr. Gardocki wrote, "Yes, his neck appears to have become symptomatic after a fall at work on 4/10/24."

Relying on Dr. Gardocki's responses to the questionnaire, Employee asked the trial court to compel Employer to authorize Dr. Gardocki for ongoing neck treatment, asserting that seeking unauthorized treatment was reasonable due to the delay in receiving a replacement panel, the decision of two panel-selected physicians not to treat him, and his urgent need for treatment of a disabling injury. He also asked the court to: (1) compel Employer to authorize Dr. Bowman for continuing left knee care; (2) compel Employer to

5

provide a neurological panel for his concussion symptoms and headaches pursuant to the referral from Dr. Lawrence; and (3) compel Employer to provide a psychiatric panel for his mental symptoms as originally recommended by Dr. Lawrence. Employee also sought temporary total disability benefits dating back to September 10, 2024, the date he was discharged by Dr. Lowe, based on Dr. Bowman's January 27, 2025 report indicating that Employee "should have been off from work since the date of the injury." For its part, Employer asserted it did not authorize these referrals because it never received written referrals from the authorized treating providers.

At the expedited hearing, Employer argued that Employee was not entitled to treatment for his neck injury with Dr. Gardocki because it was Employee's own unreasonable actions that resulted in his discharge from Dr. Lowe's practice, which, in turn, led to the unauthorized medical care. Employer also contended that Employee unreasonably sought care outside the workers' compensation system while it tried to identify eligible specialists for a replacement panel. Moreover, Employer argued that Employee did not prove the other conditions for which he seeks treatment arose primarily from the work accident. Finally, Employer asserted it does not owe temporary disability benefits because: (1) Employee failed to prove he had a work-related knee disability; and (2) Employee had been placed at maximum medical improvement by Dr. Lowe.

At the conclusion of the hearing, Employer moved for a directed verdict, arguing that Employee's claim for neck treatment was moot given the unauthorized treatment by Dr. Gardocki, and it asserted Employee had failed to prove that his other medical conditions arose primarily from the work accident.[4] The court took Employer's motion under advisement and, in its April 8 expedited hearing order, denied the motion. The court determined that the issue of Employee's neck treatment was not moot because the question of whether Employer is obligated to pay for unauthorized medical treatment depends on the reasonableness of the parties' actions in view of the totality of the circumstances. It further determined that Employer's motion for dismissal of Employee's claim for lack of proof of causation failed because "the fact that the causation standard considered by [Employee's] physicians did not exactly track the statutory language does not invalidate those physicians' opinions." Next, the court found that Employee had acted unreasonably in his interactions with Dr. Lowe and his medical staff and, therefore, was "limited to ongoing treatment for his neck injury from a physician selected from a replacement panel" and was not entitled to ongoing care by Dr. Gardocki.

Regarding the left knee, the court weighed the competing opinions of Dr. Bowman and Dr. Hazlewood and concluded that Dr. Bowman's opinion offered the most probable

---

[4] In a non-jury setting, such a motion is correctly called a motion for involuntary dismissal under Tennessee Rule of Civil Procedure 41.02(2), which states: "After the plaintiff in an action tried by the court without a jury has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." Tenn. R. Civ. P. 41.02(2).

explanation of the causal relationship between Employee's fall and his torn meniscus and ligament injury in the left knee. The court noted that although Dr. Bowman's opinion "was not stated in response to a rigid recitation of statutory language [it] does not limit the Court's confidence in it." The court also noted that Employee reported left knee pain to the emergency physician he saw on the date of the injury and that an x-ray of the left knee was obtained. As a result, the court found that Employee had established he would likely prevail at trial in showing his left knee condition and the need for treatment arose primarily from the work accident.

As to ongoing care, the court found that Employer had failed to authorize further treatment as recommended by Dr. Lawrence and, instead, sought alternative causation opinions before ultimately denying the compensability of the knee claim. The court concluded that, under those circumstances, Employee had established he would likely prevail at trial in proving an entitlement to ongoing left knee treatment with Dr. Bowman.

The court also determined Employee had come forward with sufficient evidence supporting an order for a panel of neurologists to evaluate his concussion-type symptoms based on Dr. Lawrence's original referral. Further, because Employer failed to authorize a referral for cognitive behavioral therapy as recommended by the authorized physician, the court stated that Employee could return to the clinic that originally recommended that therapy for any further reasonable and necessary treatment of any work-related mental symptoms and ordered Employer to authorize such treatment.

Finally, the court found Dr. Bowman had opined that Employee had been disabled as a result of the left knee injury since the date of the accident. Because Employer stopped paying temporary disability benefits on September 10, 2024, the court awarded Employee temporary disability benefits from September 11, 2024 through January 27, 2025, at Employee's stipulated compensation rate of $629.24. The court also found that, although Dr. Lowe had placed Employee at maximum medical improvement for his neck injury, this did not affect his entitlement to temporary disability benefits related to the knee injury. Both parties have appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2024). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of

statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2024).

## Analysis

On appeal, Employer contends Employee failed to establish that his left knee injury arose primarily out of and in the course and scope of his employment and that the trial court erred in accepting Dr. Bowman's causation opinion when it did not address the proper statutory causation standard. It argues Employee is not entitled to additional temporary disability benefits or additional medical benefits for the left knee condition. For his part, Employee contends the trial court erred by declining to compel Employer to authorize Dr. Gardocki as Employee's authorized treating physician for his cervical spine injury instead of ordering a new panel of physicians.[5]

### *Employer's Appeal*

At an expedited hearing, an employee need not establish every essential element of his or her claim by a preponderance of the evidence but must come forward with sufficient evidence from which the trial court can determine that the employee likely will prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). As we have previously noted, the legislature

> deliberately established a lesser standard of proof to be applied at expedited hearings that authorizes trial courts to order the initiation of certain benefits on an interlocutory basis prior to the final trial of a case. In evaluating a request for benefits at an expedited hearing, the trial court must determine, based on the totality of the evidence presented at that time, whether the employee "would likely prevail" at trial.

*Miller v. Old Folks Mission Ctr., Inc.*, No. 2018-07-0022, 2019 TN Wrk. Comp. App. Bd. LEXIS 1, at *18 (Tenn. Workers' Comp. App. Bd. Jan. 9, 2019). In reviewing an interlocutory order, our inquiry focuses on whether the employee established a *likelihood* of prevailing at trial. Here, we must determine whether the evidence preponderates against the trial court's finding that Employee will likely prevail at trial in proving his left knee condition and the need for treatment arose primarily out of the work injury.

---

[5] Neither party appealed the portions of the trial court's order addressing treatment for the concussion-type symptoms or the mental symptoms.

In determining Employee would likely prevail at trial, the court concluded that Dr. Bowman's causation opinion indicating that the knee condition is "causally related" to the work accident was entitled to greater weight than Dr. Hazlewood's opinion that the condition preexisted the work accident and there was no evidence of a compensable aggravation of that condition. The court reasoned that Employee reported left knee pain to the emergency room physician on the date of the accident and consistently "reported left-knee pain to most providers, if not every provider, he saw at the outset of his treatment." The court also emphasized that Dr. Bowman's causation opinion was consistent with Dr. Lawrence's opinion that Employee's left knee treatment was "necessary under workers' compensation." In support of this proposition, the court quoted from on our opinion in *Panzarella v. Amazon.com, Inc.*, No. 2015-01-0383, 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *14 (Tenn. Workers' Comp. App. Bd. May 15, 2017), and stated we held that "a physician may render a [causation] opinion that meets the [statutory legal standard] without couching the opinion in a rigid recitation of the statutory definition." (Alterations in trial court order.) The court then concluded, "[T]he fact that the causation standard considered by [Employee's] physician did not exactly track the statutory language does not invalidate those physicians' opinions."

In *Panzarella*, an employee alleged he suffered a work-related injury to his left knee, and the trial court found he had not proven compensability of his claim by a preponderance of the evidence because the causation opinion he provided failed to satisfy the requirements of Tennessee Code Annotated section 50-6-102(14). *Id.* at *1-2. The employee appealed, and we affirmed the trial court's decision, which was affirmed by the Tennessee Supreme Court's Special Workers' Compensation Panel. *Id.*; *see Panzarella v. Amazon.com. Inc.*, No. E2017-01135-SC-R3-WC, 2018 Tenn. LEXIS 244 (Tenn. Workers' Comp. Panel May 16, 2018).

As applicable to the present case, although we agree with the trial court that a doctor need not necessarily adhere to a rigid recitation of the statutory language addressing expert medical causation, we have also stated, "[w]hat *is* necessary, however, is sufficient proof from which the trial court can conclude that the statutory requirements of an injury as defined in section 50-6-102[(12)] are satisfied." *Panzarella*, 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *14.

Tennessee Code Annotated section 50-6-102(12)(B) provides that

An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes.

Hence, to be entitled to medical benefits, an injured worker must establish, by a reasonable degree of medical certainty, that the employment "contributed more than fifty

percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(12)(C). In addition, the phrase "shown to a reasonable degree of medical certainty" means that, "in the opinion of the physician, it is more likely that not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(12)(D). Here, we conclude Dr. Bowman's causation statement did not meet the statutory requirements and does not support a finding that Employee is likely to prove medical causation at trial. In response to a medical questionnaire sent to him, Dr. Bowman merely agreed Employee's left knee condition was "causally related" to the work incident. Nothing in that opinion suggests Employee is likely to prove at trial that the work accident was the *primary* cause of the knee condition, "considering all causes," especially in view of evidence of a prior left knee injury, a "non-acute" tear, and pre-existing tendinitis in the left knee. Thus, we conclude Dr. Bowman's causation opinion is insufficient to establish Employee will likely prevail at trial in meeting his burden of proof as to the primary cause of his left knee condition and the need for treatment. As a result, we conclude the evidence preponderates against the trial court's findings regarding the left knee at this interlocutory stage of the case, and this portion of the trial court's order is reversed.[6]

### *Employee's Appeal*

On appeal, Employee argues the trial court erred by declining to compel Employer to authorize Dr. Gardocki as Employee's authorized treating physician for his cervical spine injury. In support of his position, Employee asserts he was reasonable in seeking out medical treatment because he was "left without an authorized neck physician for two (2) months while waiting for a replacement panel." Employee claims he needed treatment for this injury and, therefore, his decision to obtain treatment from Dr. Gardocki was reasonable under the circumstances. Employee also argues that Employer's delay in providing a panel was, in effect, a denial, given Employee's ongoing entitlement to medical care despite having been discharged from Dr. Lawrence's practice group.

In ordering a panel for ongoing treatment of Employee's neck injury, the trial court noted that Employee had acted unreasonably both when he decided to "test" Dr. Lowe's loyalty and when he decided to contact the doctor's staff. The court noted that although Employee denied using threatening language during the phone call, his comments could have been perceived as threatening. Thus, based on the totality of the circumstances, the court determined that Employee "created the circumstances leading to his need for another physician for neck treatment . . . [and] he has not shown an entitlement to ongoing care by Dr. Gardocki." We cannot conclude the trial court erred in this regard.

---

[6] The trial court also awarded Employee temporary disability benefits for a period of disability due to his left knee injury based on Dr. Bowman's opinion. Because we have concluded Employee has not shown he is likely to prevail at trial on the issue of medical causation, we also reverse the portion of the trial court's order requiring Employer to pay temporary disability benefits at this time.

## Conclusion

For the foregoing reasons, we reverse the portion of the trial court's order for ongoing medical treatment of Employee's left knee injury and associated temporary disability benefits. We affirm the portion of the trial court's order compelling Employer to provide a panel of physicians for ongoing treatment of his neck injury. Costs on appeal are taxed to Employee.



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**WORKERS' COMPENSATION APPEALS BOARD**

| | |
|---|---|
| Chad Graves | Docket No. 2024-50-5540 |
| v. | State File No. 25190-2024 |
| Southall Adventures, LLC, et al. | |
| Appeal from the Court of Workers' Compensation Claims<br>Thomas L. Wyatt, Judge | Heard August 1, 2025,<br>in Nashville, Tennessee |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 25th day of August, 2025.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Nicholas J. Peterson | | | | X | nick.peterson@petersonwhite.com<br>brady.allen@petersonwhite.com |
| Adam C. Brock-Dagnan | | | | X | adam.brockdagnan@forthepeople.com<br>kelly.slagle@forthepeople.com |
| Thomas L. Wyatt, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov